Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| MARICELA VEGA PUPO Y OTROS<br><br>*Apelados*<br><br>v.<br><br>HOGAR ETAPAS CORP.<br><br>*Apelante* | TA2026AP00091 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2025CV08123<br><br>Sobre: Desahucio por Falta de Pago |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, jueza ponente

### SENTENCIA

En San Juan, Puerto Rico, a 13 de abril de 2026.

El 26 de enero de 2026, el Hogar Etapas Corporación (Hogar o apelante) compareció ante nos mediante una *Apelación* y solicitó la revocación de la **Sentencia**[1] emitida y notificada el 16 de enero de 2026 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro apelado). Mediante el aludido dictamen, el TPI declaró ha lugar la *Demanda*, ordenó el lanzamiento del apelante de las propiedades ubicadas en la calle 8 #1120 y #1122 de la Urbanización Puerto Nuevo y ordenó el pago del correspondiente canon mensual de arrendamiento ($1,500.00 por cada propiedad) hasta que las desaloje totalmente.

Por los fundamentos que expondremos a continuación, **confirmamos** la sentencia apelada*.*

### I.

A continuación, resumimos los hechos pertinentes para la disposición del caso, los cuales surgen del expediente ante nuestra

---

[1] Entrada #39 del expediente del Tribunal de Primera Instancia, caso Núm. SJ2025CV08123 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC TPI).

consideración y de la regrabación de la vista en su fondo celebrada el 17 de diciembre de 2025[2].

El 10 de septiembre de 2025, la señora Maricela Zenaida Vega Pupo[3] (señora Vega Pupo), en su carácter personal y en representación de Vicente René Rodríguez Vega y Marilyn Leonor Rodríguez Vega (apelados), entablaron *Demanda*[4] de Desahucio bajo el proceso sumario en contra del Hogar. En síntesis, alegaron que la señora Vega Pupo es dueña de la propiedad ubicada en la dirección calle 8 número 1120 y los apelados son dueños de la propiedad ubicada en la calle 8 número 1122, ambas propiedades ubican en la Urbanización Puerto Nuevo, San Juan, Puerto Rico.

Esbozaron que, el 30 de noviembre de 2018, los apelados otorgaron un *Contrato de Arrendamiento*[5] con el Hogar por un término de dos (2) años, la renta pactada era de mil quinientos dólares ($1,500.00) mensuales, y era uno renovable al culminar el término previsto, sin ningún tipo de aumento de la renta.

Así también, el 5 de diciembre de 2018, la señora Vega Pupo firmó un *Contrato de Arrendamiento y Opción a Compra*[6] con el Hogar sobre la propiedad que ubica en la calle 8 SE 1120, Puerto Nuevo, San Juan, PR. Con un término de vigencia de 2 años a partir del 1 de diciembre de 2018 hasta el 30 de noviembre de 2020, la renta de los primeros cinco meses era de dos mil dólares ($2,000.00) y a partir del 1 de mayo de 2019 hasta el 30 de noviembre de 2020,

---

[2] El 28 de enero de 2026 este Tribunal emitió *Resolución* dirigida al foro apelado para que remitiera la regrabación de la vista de desahucio celebrada el 17 de diciembre de 2025.

[3] Entrada #15 del SUMAC TPI. La señora Vega Pupo y los apelados prestaron fianzas de no residentes.

[4] Entrada #1 del SUMAC TPI. Con la demanda, se presentaron como anejos el *Contrato de Arrendamiento y Opción a Compra* entre Maricela Vega Pupo y Hogar Etapas, Corp.; la *Escritura* de la propiedad 1122 y la *Escritura* de la propiedad 1120.

[5] Entrada #21 del SUMAC TPI, Anejo 4. Véase además la *Minuta,* en la Entrada #28 del SUMAC TPI, Prueba Documental Parte Demandante, Exhibit 3-Contrato de Arrendamiento entre Vicente Rodríguez Vega y Marilyn Rodríguez Vega y Corp. Etapas.

[6]. Entrada #21 del SUMAC TPI, Anejo 4. Véase además la *Minuta,* en la Entrada #28 del SUMAC TPI, Prueba Documental Estipulada, Exhibit 1-Contrato de Arrendamiento del 5 diciembre 2018. Calle 8, SE 1120, Puerto Nuevo, San Juan, PR. Está en la entrada 1 de la demanda.

la renta a pagar era de mil quinientos dólares ($1,500.00) mensuales. Referente a la opción a compra, en síntesis, el contrato disponía lo siguiente en la cláusula 26:

> (A) que la señora Vega Pupo confirió una opción a compra al Hogar por un término de 24 meses comenzando el 1 de diciembre de 2018,
> (B) constituyeron el precio de la opción por la cantidad de $23,000.00,
> (C) la señora Vega Pupo se obligó a vender al Hogar la propiedad en o antes de la fecha de vencimiento por el precio total de $180,000.00 de cuya cantidad se descontarían los $23,000.00,
> (D) en caso de que el Hogar no cumpliese con el otorgamiento del contrato de compraventa en el término fijado en esta opción el dinero pagado, o sea los $23,000.00 quedarían a beneficio de la señora Vega Pupo,
> (E) en la alternativa que la señora Vega Pupo se hubiese negado a vender u otorgar la escritura de compraventa tenía que devolver la cantidad de $23,000.00,
> [...]
> (I) el Hogar debía iniciar las gestiones para conseguir el financiamiento para la compra de la propiedad con tiempo razonable y antes del vencimiento del contrato. Se concedió un término de 60 días posterior al vencimiento del contrato para completar la opción a compra, **esta extensión el Hogar tenía que solicitarla por escrito y antes de cumplirse el término del contrato.**

Además, adujeron que los ***contratos de arrendamientos* se encontraban vencidos**, que el Hogar adeudaba cánones de renta atrasadas, que **la señora Vega Pupo y los apelados no interesan continuar con los contratos y solicitaron que se ordene el lanzamiento del Hogar y la intervención del Departamento de la Familia y / o el Procurador de Personas de Edad Avanzada**. Por último, solicitaron el pago de las costas, gastos y honorarios.

Por otra parte, el 24 de octubre de 2025, el Hogar presentó *Solicitud de Conversión al Proceso Ordinario*[7]. Alegó que las propiedades están en servicio de cuido de 24 horas de adultos mayores cobijados por programas del Departamento de la Familia y que la agencia debía ser notificada.

El 6 de noviembre de 2025, los apelados presentaron *Oposición a Solicitud de Conversión al Proceso Ordinario*[8] en la que

---

[7] Entrada #13 del SUMAC TPI. Se anejó la lista de residentes del hogar.
[8] Entrada #18 del SUMAC TPI.

expusieron: [...] *el caso de autos trata sobre una demanda de desahucio por falta de pago y por haberse vencido el término en el contrato de arrendamiento entre las partes. En su Solicitud de Conversión al Proceso Ordinario **<u>la parte demandada no presenta ninguna defensa de conflicto de título u otra defensa que amerite la conversión de la presente acción al procedimiento ordinario y que justifique que las partes deban llevar a cabo descubrimiento de prueba antes del señalamiento de la vista final de desahucio</u>** [...][9]*. [Énfasis nuestro].

Ese mismo día, el TPI emitió la siguiente *Orden*[10]: *Parte demandada: tenga 5 días para mostrar causa por la cual, una vez se notifique copia de la Demanda al Departamento de la Familia, al Departamento de la Vivienda, y a la Oficina de la Procuradora de Personas Envejecientes (OPPEA), el caso no pueda ventilarse bajo el procedimiento sumario de desahucio.*

El 13 de noviembre de 2025, el Hogar reiteró la conversión del proceso mediante *Moción en Cumplimiento de Orden*[11] en la que alegó que la propiedad #1120 corresponde a terceros que no son parte en el pleito, que se realizaron unas mejoras para julio y agosto 2019, que el 2 de septiembre de 2022 se comunicaron con la señora Vega Pupo para ejercer la opción a compra y, por último, al ser renovado el término del contrato, todas las cláusulas y términos estaban vigentes.

Ese mismo día, el foro apelado emitió *Orden*[12] y dispuso:

> Parte demandante: tenga **10 días** para exponer su posición. No obstante, se hace constar que este Tribunal **no ha autorizado** a que se presenten otras defensas que no sean: 1) falta de título; y 2) haber realizado los correspondientes pagos. De manera específica se hace constar que cualquier reclamo que pueda tener la parte demandada en torno a reparaciones y/o créditos que **datan del año 2019**; y/o sobre un derecho de Opción a Compra **que venció el 30 de**

---

[9] *Íd.*
[10] Entrada #19 del SUMAC TPI.
[11] Entrada #20 del SUMAC TPI.
[12] Entrada #22 del SUMAC TPI. Notificada el 14 de noviembre de 2025.

**noviembre de 2020 y donde la parte demandada reconoce a la Sra. Maricela Vega Pupo como dueña en pleno dominio de la propiedad arrendada**; y/o sobre renovación del contrato de arrendamiento se debió presentar de manera oportuna **en otro pleito**; en lugar de esperar a que se le demandara para traer estos asuntos en un pleito sobre desahucio **por la vía sumaria.**

En el interín, y para evitar dilaciones innecesarias, se ordena a la **Parte Demandante** notificar copia de su *Demanda* al Departamento de la Familia, al Departamento de la Vivienda y a la Oficina del Procurador de las Personas de Edad Avanzada (OPPEA).

De igual manera, se ordena a la **Parte Demandada** a notificar a los familiares y/o encargados de las personas que residen en el Hogar, y mantenerles adecuadamente informados sobre los reclamos y procedimientos del presente caso.

En respuesta, el 24 de noviembre de 2025, mediante *Moción en Cumplimiento de Orden*[13], la señora Vega Pupo refutó las alegaciones del Hogar y anejó copia certificada de la escritura de compraventa que demuestra haber adquirido la titularidad de la propiedad en controversia.

El 11 de diciembre de 2025, la OPPEA presentó ante el TPI Informe de Hallazgos[14].

El 17 de diciembre de 2025, se celebró la vista en su fondo. Surge de la regrabación y de la *Minuta*[15], que ante el foro apelado se discutieron asuntos relacionados con el informe presentado por la OPPEA y el *Departamento de la Familia inició el proceso del plan de acción para remover a las personas de edad avanzada y se presentó el plan de reubicación*[16]. Argumentó la *licenciada Mercado que tuvo acceso al informe de OPPEA, y entendió de lo que surge del informe que la información que había dado la parte demandada es que estaba a punto de firmar un contrato de arrendamiento, además, alegaba que había hecho unos pagos. Pero desconoce qué información se le*

---

[13] Entrada #23 del SUMAC TPI, Anejo 1.
[14] Entrada #25 del SUMAC TPI.
[15] Entrada #28 del SUMAC TPI.
[16] *Íd.*

presentó a la inspectora porque la parte demandada litigó este asunto con OPPEA y el Departamento de la Familia. En el día de hoy la parte demandante le hizo un acercamiento a la parte demandada debido a esa información. Sin embargo, aparentemente la parte demandada no tiene intenciones de desalojar la propiedad[17].

La parte demandante manifestó que la parte demandada invoca una ley que no es aplicable al titular, sino que es aplicable al arrendatario, y para eso se activan unos mecanismos y una vez el _Tribunal emita una sentencia de desalojo donde hay envejecientes y donde hay menores de edad, tiene que notificar la orden de desalojo y coordinar con el Departamento de la Familia para que remueva a esos envejecientes._ Prefiere que el proceso sea así, a dejar a que sea un término incierto porque se invoca una ley que se la quieren aplicar al titular[18].

El Tribunal les adelantó a las partes, que este siendo un caso de desahucio, lo único que verá en el día de hoy es la falta de pago. En cuanto al desahucio estará citando al personal del Departamento de la Familia para que le explique de dónde salen los fondos para pagarle al Hogar y le explique porque no debe ordenar la remoción de los 25 envejecientes para que los distribuyan en los diferentes Hogares. El licenciado Juliá manifestó que ello fue lo que le sugirió a la parte demandante de que le concediera un término y en marzo el Departamento de la Familia y OPPEA digan cuando los van a remover[19].

El Tribunal indicó que es tan pronto dicte sentencia la parte demandante le va a notificar al Departamento de la Familia y a Vivienda. El licenciado Juliá solicitó unos minutos para conversar con su cliente. Luego del licenciado Juliá hablar con su cliente informó que

---

[17] _Íd._
[18] _Íd._
[19] _Íd._

*no está autorizado aceptar el ofrecimiento de la parte demandante. La parte demandante informó que le está ofreciendo a la parte demandada darle un término de dos (2) meses, que se allanen a que se dicte sentencia, que van a desalojar la propiedad la deuda la están poniendo desde octubre de 2025 y están renunciando a cualquier cantidad anterior. La parte demandante se compromete a comenzar los procesos de desalojar después de 2 meses, o sea, hasta el 28 feb. 2026. El Tribunal ante lo informado por las partes indicó que procederá a ver la vista*[20].

La prueba admitida en la vista fue la siguiente:

**Prueba Documental Estipulada:**
Exhibit 1-Contrato de arrendamiento del 5 diciembre 2018. Calle 8, SE 1120, Puerto Nuevo, San Juan, PR.

Exhibit 2-Escritura de compraventa de la propiedad de la Sra. Maricela Vega Pupo.

**Prueba Documental parte demandante**
Exhibit 1-Solicitud extrajudicial de desalojo (carta) del 18 de junio de 2025, suscrita por la Lcda. Darilys Mercado.

Exhibit 2-Protocolización de poder.

Exhibit 3-Contrato de arrendamiento entre Vicente Rodríguez Vega y Marilyn Rodríguez Vega y Corp. Etapas.

**Prueba Documental parte demandada**
Exhibit 1-Resolución corporativa de Hogar Etapas Corporation, del 14 octubre de 2025, suscrita por Zayderin Bryan. (Antes Identificación 1 parte demandada).

Exhibit 2-Cheques de los pagos de la renta desde enero de 2025 hasta octubre de 2025, para un total de 10 cheques. (Antes identificación 2 parte demandada).

El 16 de enero de 2026, el foro apelado emitió y notificó *Sentencia*[21]. En esta, determinó 6 hechos que no están en controversia, a saber:

1. El primer **Contrato de Arrendamiento** fue firmado el 1 de diciembre de 2018, para el arrendamiento de la propiedad que ubica en la calle 8 #1120 de la Urbanización Puerto Nuevo.
2. El primer Contrato tenía una duración de 2 años; y venció el 30 de noviembre de 2020.
3. El segundo **Contrato de Arrendamiento** fue firmado el 5 de diciembre de 2018, para el arrendamiento de la propiedad

---

[20] *Íd.*
[21] Entrada #39 del Tribunal de Primera Instancia.

que ubica en la calle 8 #1122 de la Urbanización Puerto Nuevo.

4. El segundo Contrato tenía una duración de 2 años; y venció el 5 de diciembre de 2020.

5. ***Entre las partes no existe controversia en que, una vez finalizados los términos originales de ambos Contratos de Arrendamiento, respectivamente desde el 30 de noviembre de 2020 y 5 de diciembre de 2020***, su relación de <u>arrendamiento ha sido de mes a mes.</u> Así lo confirmaron las partes durante la Vista en su Fondo celebrada el 17 de diciembre de 2025. (SUMAC 28).

6. La Demanda se presentó el 10 de septiembre de 2025; o sea, casi 5 años después de haber vencido los dos (2) Contratos de Arrendamiento.

Aseveró que: <u>*los demandantes no lograron establecer la falta de pago*</u> *que reclamaron en su Demanda. En particular, aparte del testimonio bajo juramento de la Sra. Maricela Vega Pupo, estos no presentaron - ni intentaron presentar - evidencia alguna para establecer la falta de pago*[22]. *Por su parte, <u>el Hogar tampoco logró establecer que estuviera al corriente en todos sus pagos</u>. Sobre dicho asunto se hace constar que, aun cuando El Hogar presentó copia de varios cheques, estos no tienen endoso y/o evidencia de cancelación y/o depósito. <u>El Hogar tampoco logró establecer que dichos cheques correspondieran al pago de arrendamiento para el mes en que fueron expedidos</u>*[23].

Por consiguiente, el TPI procedió a declarar *HA LUGAR la Demanda (SUMAC 1) presentada en este caso. En su consecuencia, se ordena el desahucio de El Hogar de las dos (2) propiedades que se identifican en la Demanda (SUMAC 1); a saber: 1. calle 8 #1120 de la Urbanización Puerto Nuevo; y 2. calle 8 #1122 de la Urbanización Puerto Nuevo. Se hace constar que, mientras El Hogar continúe ocupando cualquiera de las dos (2) propiedades que se identifican en esta Sentencia, viene obligado a pagar el correspondiente canon mensual de arrendamiento ($1,500.00 por cada propiedad) hasta la*

---

[22] *Íd.*

[23] *Íd.*

*fecha en que recoja sus pertenencias, desaloje totalmente la(s) propiedad(es), y entregue las respectivas llaves*[24].

Inconforme aún, el 26 de enero de 2026, el Hogar recurrió ante nos mediante recurso de *Apelación* en el que presentó el siguiente señalamiento de error:

> ERRÓ EL TPI AL NO DESESTIMAR LA DEMANDA SUMARIA DE DESAHUCIO POR FALTA DE PAGO, POSTERIOR HA HABERSE CELEBRADO LA VISTA EN SU FONDO Y NO RECIBIRSE NINGUNA PRUEBA SOBRE ESTE ELEMENTO, EMPERO DICTANDO SENTENCIA DECLARÁNDOLA CON LUGAR BAJO UN CONCEPTO LEGAL NATURAL AL PROCESO ORDINARIO, YA DESCARTADO, Y SOBRE EL CUAL SE HABÍA IMPOSIBILITADO DESFILE DE PRUEBA.

El 28 de enero de 2026, este Tribunal emitió una *Resolución* en la cual ordenó a la Secretaria Regional del Tribunal de Primera Instancia, Sala Superior de San Juan, que preparara y remitiera a este foro intermedio la regrabación de la vista de desahucio celebrada ante el Hon. Andrés M. Ramírez Marcano el 17 de diciembre de 2025 y, a los apelados, a presentar su respectivo alegato en un término a vencer el 25 de febrero de 2026.

A tales fines, el 30 de enero de 2026, compareció de forma especial la Coordinadora de Sistema y notificó que remitió la regrabación de los procedimientos y el 25 de febrero de 2026, según ordenado, se presentó el *Alegato de la Parte Apelada*.

Con el beneficio de la comparecencia de las partes, procedemos a discutir el marco legal pertinente a la controversia ante nuestra consideración.

## II.

### -A-

En lo pertinente a la controversia que nos ocupa, el Tribunal Supremo de Puerto Rico ha establecido que el desahucio es un procedimiento especial de naturaleza sumaria, cuya finalidad es recuperar la posesión de una propiedad inmueble mediante el

---

[24] *Íd.*

lanzamiento o expulsión del arrendatario o precarista que la detente[25]. Este procedimiento es regulado por el Código de Enjuiciamiento Civil de Puerto Rico, cuyas normas determinan el curso a seguir en las acciones de desahucio[26].

El procedimiento sumario de desahucio procura de la manera más rápida posible, la reivindicación de determinados derechos del arrendador, tales como recuperar la posesión material del bien arrendado, reduciendo al mínimo constitucionalmente permisible las garantías procesales. Tal proceder sumario ha permitido limitar y acortar ciertos términos y prescindir de ciertos trámites comunes al proceso ordinario, sin que ello conlleve suprimir o menoscabar la oportunidad del arrendatario de ejercer con efectividad sus defensas durante el litigio[27]. El desahucio no es una de las formas de terminar el arrendamiento, sino un medio de recobrar judicialmente la cosa inmueble arrendada, cuando aquél se acaba por la concurrencia de ciertas causas extintivas. Esta acción tiene un carácter resolutorio del contrato.

En aquellos casos en que la demanda se fundamenta en la falta de pago del canon o precio convenido en un contrato, el Artículo 628 del Código de Enjuiciamiento Civil expresamente dispone que no se admitirá otra prueba que la del recibo o cualquier otro documento en que conste haberse verificado el pago. Si la causa del desahucio es la falta de pago, el Tribunal de Primera Instancia podrá acumular la reclamación de cobro de dinero y adjudicarla dentro del procedimiento de desahucio[28].

El Código Civil 2020[29] reitera que el desahucio es el mecanismo que tiene una persona para hacer valer su derecho

---

[25] *Mora Dev. Corp. v. Sandín,* 118 DPR 733 (1987).
[26] 32 LPRA sec. 2821, *et seq.*
[27] *Turabo Ltd. Partnership v. Velardo Ortiz,* 130 DPR 226, 241-245 (1992); *Mora Dev. Corp. v. Sandín, supra,* págs. 749-750.
[28] 32 LPRA sec. 2829.
[29] Ley Núm. 55-2020, 31 LPRA 7863, según enmendado.

posesorio. A esos fines, el Art. 725 del Código Civil de Puerto Rico (2020[30]), establece que "[l]a persona con derecho a poseer un bien tiene acción para promover el juicio de desahucio contra cualquier poseedor sin derecho a poseer". Mediante esta acción legal se procura la expulsión del arrendatario o precarista que se mantiene en la propiedad sin pagar canon o merced alguna[31].

En armonía con lo anterior, el Art. 620 del Código de Enjuiciamiento Civil, Ley Núm. 6 de 31 de marzo de 1933, 32 LPRA sec. 2821, según enmendada (Código de Enjuiciamiento), reconoce legitimación activa a las siguientes personas para instar la acción de desahucio:

> Tienen acción para promover el juicio de desahucio los dueños de la finca, sus apoderados, los usufructuarios o cualquiera otro que tenga derecho a disfrutarla y sus causahabientes.

En esa línea, el Art. 621 de la precitada legislación delimita los sujetos jurídicos contra los que procede incoar esta reclamación:

> Procederá el desahucio contra los inquilinos, colonos y demás arrendatarios, los administradores, encargados, porteros o guardas puestos por el propietario en sus fincas, y cualquier otra persona que detente la posesión material o disfrute precariamente, sin pagar canon o merced alguna. 32 LPRA Sec. 2822.

En el Artículo 725, del Código Civil 2020[32] establece:

> Acción de desahucio. La persona con derecho a poseer un bien tiene acción para promover el juicio de desahucio contra cualquier poseedor sin derecho a poseer.

Es menester destacar que, al momento de instar el pleito de desahucio, este puede solicitarse en un proceso ordinario o sumario[33]. De ser un procedimiento sumario, se entiende que lo único que se busca recobrar es la posesión[34]. Lo anterior implica

---

[30] 31 LPRA secc. 7863.
[31] *SLG Ortiz-Mateo v. ELA*, 211 DPR 772, 779 (2023); *Cooperativa v. Colón Lebrón*, 203 DPR 812, 820 (2020).
[32] 31 LPRA secc. 7863.
[33] *Adm. Vivienda Pública v. Vega Martínez*, 200 DPR 235, 240 (2018).
[34] *ATPR v. SLG Volmar-Mathieu*, 196 DPR 5, 10 (2016).

que, como norma general, los conflictos de título no pueden dilucidarse en esta reclamación[35].

Respecto la carga probatoria aplicable a estos casos, el Tribunal Supremo de Puerto Rico ha pautado la siguiente normativa:

> [E]l demandante en una acción de desahucio en precario debe, en primer instancia probar prima facie su caso, o sea, debe presentar prueba en torno a su título sobre la finca y que esa finca es la misma que está en posesión del demandado nen precario. Si no prueba esa circunstancia, no está justificada una sentencia a su favor. *Escudero v. Guzman*, 96 DPR 299, 302 (1968). (Énfasis nuestro).

No obstante, si la parte demandada "produce prueba suficiente que tienda a demostrar que tiene algún derecho a ocupar un inmueble y que tiene un título tan bueno o mejor que el del demandante surge un conflicto de título que hace improcedente la acción de desahucio"[36].

**-B-**

Lo acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley. Artículo 1233, Código Civil 2020[37]. De ahí nace la definición de un contrato, a saber, el contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones. Artículo 1230 Código Civil 2020[38]. La obligación contractual se configura cuando concurren los siguientes requisitos: (1) consentimiento de los contratantes; (2) objeto cierto que sea materia del contrato; y (3) causa de la obligación. Articulo 1237 Código Civil 2020[39]. Al concurrir lo anterior, se perfecciona el contrato y, desde entonces, este obliga al cumplimiento de lo

---

[35] *Crespo Quiñones v. Santiago Velázquez*, 176 DPR 408, 431 (2009); *C.R.U.V. v. Román*, 100 DPR 318, 321 (1971).
[36] *C.R.U.V. v. Román, supra*, pág. 322.
[37] 31 LPRA secc. 9754. Artículo 1044 del Código Civil, derogado, 31 LPRA sec. 2994.
[38] 31 LPRA secc. 9751. Artículo 1206, Código Civil derogado, 31 LPRA secc. 3371.
[39] 31 LPRA secc. 9771. Artículo 1213, Código Civil derogado 31 LPRA sec. 3391.

pactado y a todas las consecuencias que según su naturaleza sean conformes a la buena fe, el uso y la ley.

Como principio general, los contratos no tienen requisitos de forma. Artículo 277 del Código Civil 2020[40]. Por otro lado, una vez perfeccionados, los contratos tienen fuerza de ley entre las partes, "y desde entonces obligan, no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conforme a la buena fe, al uso y a la ley"[41].

El concepto *causa* consiste en la razón por la cual se obliga el deudor. En términos sencillos y diáfanos, Guaroa Velázquez define la *causa* contractual como la "razón esencial que impulsa al deudor a obligarse"[42].

El derecho de contratos en nuestro ordenamiento jurídico está asentado en la premisa inexorable de que no existe contrato sin causa o cuando la causa es ilícita[43]. En cuanto a la causa, el Artículo 276 del Código Civil 2020[44], dispone que "La falta de causa lícita coetánea con la celebración del negocio jurídico, lo vicia de nulidad. Si al momento de su cumplimiento, la causa se frustra por razones no imputables a las partes, el negocio jurídico puede resolverse por decisión del perjudicado, o pueden adecuarse las prestaciones".

**-C-**

Bajo el Código Civil 1930 derogado, el estado de derecho era el siguiente; al igual que en casi todas las jurisdicciones de tradición civilista, el contrato o pacto de opción no está reglamentado en

---

[40] 31 LPRA secc. 6161.

[41] 31 LPRA sec. 9754. Véase, además, *Oriental Bank v. Perapi et al.*, 192 DPR 7 (2014); *Burgos López et al. v. Condado Plaza*, 193 DPR 1, 8 (2015).

[42] Guaroa Velázquez, La Obligaciones Según el Derecho Puertorriqueño, a la pág. 44 (Equity Publishing 1964); *C.M. Finance Corp. v. Cooley,* 103 DPR 6, 8 (1974).

[43] Artículo 271. — Presunción de causa lícita. (31 LPRA secc. 6142) Se presume que el negocio jurídico tiene causa lícita, aunque no esté expresada. *Sánchez Rodríguez v. López Jiménez,* 116 DPR 172, 181 (1985). Artículo 275. — Causa lícita. (31 LPRA secc. 6146) El negocio jurídico debe tener causa lícita al momento de su celebración y conservarla hasta su ejercicio.

[44] 31 LPRA secc. 6147. Código Civil 1930 derogado, Artículo 1227 31 LPRA sec. 3432.

nuestro Código Civil[45]. Más bien se trata de un contrato que ha sido definido jurisprudencialmente de la siguiente manera: "[...] un contrato consensual, mediante el cual una parte (promitente) le concede a otra parte (optante) el derecho exclusivo a decidir de manera unilateral si comprará determinado bien inmueble que le pertenece al promitente. Esta facultad tendrá que ejercitarse dentro de un período de tiempo definido por las partes, y tanto el promitente como el optante se beneficiarán con el negocio[46].

En esencia, el contrato de opción de compraventa es un contrato preparatorio o precontrato encaminado al eventual otorgamiento de un contrato de compra y venta, el cual se distingue por los siguientes elementos esenciales: (1) se concede al optante la facultad de decidir unilateralmente si celebrará el contrato principal (la compra y venta) sin ninguna obligación por parte de éste; (2) dicha concesión tiene carácter de exclusividad; (3) se establece un plazo para ejercitar la opción, y (4) no existe otra condición que no sea la voluntad del optante[47].

En lo que respecta a los requisitos del contrato de opción a compra, nos señala Michel J. Godreau:

> [N]uestro ordenamiento no permite todavía que la mera manifestación por parte de un propietario en el sentido de que él se obliga a vender obligue a éste a aceptar un precio o unos términos de pago a los cuales no ha consentido libremente. La determinación respecto a la enajenación de un bien y el precio de cambio del cual el mismo ha de transferirse es cuestión que nuestro ordenamiento deja todavía al arbitrio del propietario.
>
> De la posibilidad de obligarle a transferir su propiedad a otro particular sólo puede hablarse cuando ha habido **acuerdo sobre la cosa y el precio.** En cambio, cuando lo único que se ha acordado es "la venta", sin más, ni siquiera el juicio imparcial de un juez respecto al valor en el mercado del bien en controversia puede sustituir la prerrogativa dominical de fijar el precio y establecer los términos de la enajenación, prerrogativa que en este sistema sólo le compete al dueño." Michel J. Godreau, _La opción de compra en Puerto Rico,_ 53 Rev. Jur. UPR 569 (1984) a la pág. 569.

---

[45] Véase Michel J. Godreau, _La opción de compra en Puerto Rico,_ 53 Rev. Jur- UPR 565 (1984).

[46] _S.L.G. Irizarry v. S.L.G. García_, 155 DPR 713, 722 (2001).

[47] _S.L.G. Irizarry v. S.L.G. García, supra_, pág. 722.

Resulta meritorio resaltar que "[e]n la opción se da un proceso en donde el *consentimiento* hacia la obligación surge, como en todo contrato, en virtud del intercambio de manifestaciones recepticias. La voluntad se forja a base de un proceso de negociación. No se trata de manifestación unilateral de voluntad, porque las obligaciones que surgen del pacto de opción son el resultado de un proceso de negociación entre el concedente y el optante, proceso que no se da en las obligaciones cuya fuente es la mencionada manifestación unilateral de voluntad"[48]. Por lo tanto, el proceso para elaborar y perfeccionar un contrato de opción a compra es uno *necesariamente* de negociación y no unilateral.

El ejercicio de la opción no es otra cosa que la aceptación de la oferta de venta, la cual equivale para el comprador a su promesa de pagar el precio pactado[49]. El pacto de opción tiene que definir la oferta que habrá de mantenerse vigente *con todos los elementos de una oferta final y completa* del contrato de compraventa. En otras palabras, **para que estemos ante un verdadero pacto de opción, no pueden quedar por negociar términos o condiciones del contrato de compraventa que sean de importancia para las partes**[50]. Por su parte, "[r]especto al precio de la finca, que es el que importa desde el punto del contenido de la oferta, tiene que tratarse de un precio en metálico, porque se trata de una oferta de venta, no de permuta. **Además, aplican aquí los principios de las obligaciones respecto a los requisitos de la prestación, en particular, el de la determinabilidad de la misma**. No será necesario que el precio de venta esté exactamente determinado, siempre y cuando su determinación final no requiera un nuevo proceso de negociación"[51].

---

[48] Michel J. Godreau, *La opción de compra en Puerto Rico,* 53 Rev. Jur. UPR a la pág. 577.
[49] *Íd.*, a la pág. 578.
[50] *Íd.*, a la pág. 596.
[51] *Íd.*, a la pág. 597.

De otra parte, en cuanto a la promesa bilateral de compraventa, nuestro Código Civil dispone que es la promesa de vender o comprar, habiendo conformidad de la cosa y en el precio, y la misma da derecho a los contratantes a reclamar recíprocamente el cumplimiento de esta. Siempre que no pueda cumplirse la promesa de compra y venta, regirá, para vendedor y comprador, según los casos, lo dispuesto acerca de las obligaciones y contratos en el Código Civil, Artículo 1340[52].

Este tipo de contrato preparatorio produce una obligación de hacer y no de dar, ya que sólo tiene por objeto la realización futura de un contrato de compraventa[53]. El contrato de promesa bilateral tiene la ventaja de lograr la vinculación inmediata de las partes cuando por alguna razón no puede otorgarse una compraventa completa y definitiva y que, mediante la vinculación inmediata, las partes logran la garantía o seguridad de que el contrato definitivo o completo se celebrará o concluirá más tarde[54].

Por consiguiente, ante la negativa de una de las partes de cumplir con la promesa bilateral, cabe una acción para exigir su cumplimiento específico y no simplemente una acción para el resarcimiento de perjuicios, si la prestación básica no se refiere a hechos personalísimos o las líneas básicas sentadas en el precontrato no son insuficientes[55]. Así pues, si la cosa prometida en venta está todavía en el patrimonio del promitente, el acreedor en un contrato de promesa bilateral de venta de un inmueble podría exigir su cumplimiento en forma específica: la celebración de la venta previamente convenida y el otorgamiento de la correspondiente escritura pública. Íd.

---

[52] 31 LPRA sec. 3747.
[53] *Soto v. Rivera*, 144 DPR 500, 509-510 (1997); *Dennis, Metro Invs. v. City Fed. Sav.,* 121 DPR 197 (1988); *Jordán-Rojas v. Padró-González*, 103 DPR 813, 817 (1975).
[54] *Rossy v. Tribunal Superior*, 80 DPR 729, 742 (1958).
[55] *Rossy v. Tribunal Superior, supra*, pág. 743; Véase también, *Jordán-Rojas v. Padró-González, supra*, pág. 819.

Ahora, el Código Civil 2020 regula el contrato de opción por los siguientes Artículos:

> Artículo 1029. — Opción. La opción de compra es el derecho que faculta a su titular para que decida durante un plazo determinado, mediante la manifestación de su aceptación, el perfeccionamiento del contrato de compraventa que ha sido ya acordado en todos sus aspectos fundamentales y secundarios y a cuyo cumplimiento se mantiene comprometido el concedente durante el plazo prefijado[56].

El Artículo 1030 del Código Civil[57] vigente enumera algunos requisitos que, como mínimo, debe contener la opción de compra para su constitución.

> Artículo 1030. — Requisitos del título de constitución. El título de constitución, además de las estipulaciones y del domicilio a efectos de las notificaciones preceptivas y demás pactos que el constituyente o los constituyentes tengan por conveniente, debe contener, como mínimo, los siguientes requisitos: (a) el plazo de duración del derecho y, si procede, el plazo para su ejercicio; (b) en su caso, la voluntad del constituyente o de los constituyentes de configurar el derecho con carácter real; (c) el precio o contraprestación para la adquisición del bien o los criterios para su fijación, cuando se trate de un derecho de opción a una adquisición onerosa, indicando el precio estipulado para su adquisición. Cuando se prevean cláusulas de estabilización, deben contener criterios objetivos y el precio debe poder fijarse con una simple operación aritmética; y (d) la prima pactada para su constitución, cuando el derecho se constituye a título oneroso, indicando el precio convenido. Los contratos de opción de compra se pueden inscribir cuando cumplan con los requisitos anteriores y consten en escritura pública.

> Artículo 1031. — Duración del derecho. (31 LPRA § 8823) El derecho de opción de naturaleza real puede constituirse por un tiempo máximo de cinco años, si recae sobre bienes inmuebles, o de dos (2) años, en el caso de los bienes muebles. La inscripción de la opción en el Registro de la Propiedad caduca transcurrido el plazo para ejercerla, o cinco (5) años después de la fecha en que fue inscrita. Puede inscribirse otra vez por el término aquí dispuesto, si no ha vencido el término contractual para el ejercicio de la opción. La opción inscrita tiene la condición de gravamen y obliga a los subsiguientes adquirentes de acuerdo con sus términos. El derecho de opción puede ser objeto, por acuerdo, de sucesivas prórrogas, pero cada una de ellas no puede exceder los tiempos máximos establecidos en los párrafos anteriores. Cuando el derecho de opción se constituye como un pacto o una estipulación integrada en otro negocio jurídico, su duración puede ser la misma de este negocio jurídico, con las correspondientes prórrogas. La opción de compra contenida en un contrato de arrendamiento es inscribible, única y exclusivamente por la duración del arrendamiento sin incluir la prórroga.

---

[56] 31 LPRA secc. 8821.
[57] 31 LPRA secc. 8822.

> Artículo 1032. — Ejercicio[58]. El ejercicio del derecho de opción a la adquisición onerosa requiere el pago previo o simultáneo del precio fijado, determinado según los criterios establecidos, o el que resulta de la aplicación de las cláusulas de estabilización, si se han previsto.

> Artículo 1235. — Contrato preliminar; opción. (31 LPRA § 9756) Por el contrato preliminar las partes se obligan a celebrar un contrato futuro. El contrato preliminar se denomina Opción si le atribuye a una sola de las partes la facultad de decidir sobre la celebración del contrato futuro. El contrato preliminar no está sujeto a cumplir las formalidades que debe satisfacer el contrato futuro. Si la parte requerida se niega al otorgamiento del nuevo contrato, el tribunal puede exigir a la misma estricto cumplimiento.

De otra parte, se ha reiterado que "el alcance de la opción aludida no se puede fijar sin tomar en cuenta el contenido específico que en [el] contrato se le imparte"[59]. Por lo cual, hemos reconocido la posibilidad de que las partes convengan que el derecho de opción esté supeditado al cumplimiento de ciertas condiciones[60].

### III.

El apelante señala, en síntesis, que el TPI erró al denegar su solicitud de conversión del procedimiento sumario de desahucio a un procedimiento ordinario. Así pues, nos corresponde determinar si actuó correctamente el TPI al no ordenar la conversión del procedimiento de desahucio sumario a uno ordinario. Veamos.

En *Fernández & Hno. v. Pérez,* el Tribunal Supremo resolvió expresamente lo siguiente:

> El beneficio de la economía y rapidez del trámite sumario se perdería si la acción no queda restringida a la consideración y resolución de la cuestión estricta para la que se ha creado: la recuperación de la posesión material en los casos determinados por la ley. De ahí que el tratamiento de todos los demás derechos y cuestiones accesorias o colaterales sólo corresponde a la acción ordinaria y que el único pronunciamiento en la sentencia de desahucio es si procede o no ordenar el desalojo. Por tanto, en el juicio del desahucio no cabe ventilar ni resolver reclamaciones en cobro de dinero que el arrendatario alegue tener contra el desahuciante bien sea por concepto de las reparaciones hechas durante el término del contrato o por cualesquiera otros conceptos. **En verdad, el trámite sumario del**

---

[58] 31 LPRA secc. 8824.
[59] *Zeta Enterprises, Inc. v. ELA,* 145 DPR 1, 10 (1998).
[60] *Íd.*

**desahucio hace inadmisible cualquier reconvención o contrademanda por parte del desahuciado**[61].

Por otro lado, nuestra *Alta Curia* ha resuelto que, la necesidad de convertir el procedimiento sumario en uno ordinario no puede ocasionar dilaciones innecesarias, por lo que el demandado deberá establecer prima facie los méritos de su defensa[62]. La guía en estos casos deberá ser el sano discernimiento judicial. Una ***vez se esgrimen las defensas pertinentes, el juzgador deberá auscultar sus méritos***, *los hechos específicos que se aducen y discrecionalmente ordenar la conversión del procedimiento al juicio ordinario*[63].

En el caso que nos ocupa, el Hogar alega que el caso debe atenderse bajo el palio ordinario porque existe controversia sobre el título de la finca #72225, que en julio y agosto de 2019 realizó reparaciones en la propiedad arrendada #1120, que en septiembre de 2022 realizó gestiones oportunas para ejercitar el derecho a opción a compra de la propiedad #1120 y renovar el arrendamiento de ambas propiedades y, por último, razona que los contratos del 2018 fueron renovados, así pues, los términos y condiciones están vigentes. Reclama, por tanto, que incide el TPI al no convertir el proceso sumario a uno ordinario.

Surge del expediente que el TPI justiprecia las defensas y alegatos del Hogar y determina, en síntesis, que no procede la conversión del procedimiento porque las defensas no giraban en torno a la falta de título de la señora Vega Pupo[64] o discrepancia sobre el pago de las rentas. El foro apelado razona *que cualquier reclamo que pueda tener la parte demandada en torno a reparaciones*

---

[61] *Fernández & Hno. v. Pérez,* 79 DPR 244, 247, 248 (1956).
[62] *Mora Dev. Corp. v. Sandín, supra,* a la pág. 750; *Marín v. Montijo,* 109 DPR 268 (1979*); Brunet v. Corte,* 45 DPR 901 (1933)
[63] *Turabo Ltd. Partnership v. Velardo Ortiz, supra,* págs. 245-246.
[64] Prueba estipulada Escritura de Compraventa la Propiedad de la Sra. Maricela Vega Pupo.

*y/o créditos que datan del año 2019; y/o sobre un derecho de Opción a Compra que venció el 30 de noviembre de 2020 y donde la parte demandada reconoce a la Sra. Maricela Vega Pupo como dueña en pleno dominio de la propiedad arrendada; y/o sobre renovación del contrato de arrendamiento se debió presentar de manera oportuna en otro pleito.*

Destacamos que constituye norma reiterada que el TPI tiene discreción, de acuerdo con los hechos específicos de cada caso, para "ordenar la conversión del procedimiento [de desahucio sumario] al juicio ordinario"[65]. Ciertamente, de ordinario, las determinaciones discrecionales del foro primario, relacionadas con el manejo del caso merecen nuestra deferencia, a menos que se demuestre que la determinación tomada por el foro primario fue irrazonable, abusó de su discreción o incurrió en un menoscabo a la justicia.

Tras evaluar minuciosamente el expediente ante nuestra consideración y escuchada la regrabación de los procedimientos, colegimos que el Hogar se ampara en meras alegaciones y pretende persuadirnos de la existencia de alguna defensa e, inclusive, de que existe un conflicto de título respecto a la propiedad en cuestión. Sin embargo, de la prueba admitida y aquilatada por el foro apelado, no se desprende que el apelante haya demostrado que posee un mejor título que el que demostró ostentar la señora Vega Pupo, tal como lo exige nuestro ordenamiento jurídico.

Como mencionamos previamente, [e]s doctrina general establecida por el Alto Foro, que los conflictos de título no pueden dilucidarse en el juicio de desahucio por ser este uno de carácter sumario en que únicamente se trata de recobrar la posesión de un inmueble por quien tiene derecho a ella. A tono con tal doctrina, **si un demandado en desahucio produce prueba suficiente que**

---

[65] *Turabo LTD. Partnership v. Velardo Ortiz, supra,* pág. 246 (1992).

**tienda a demostrar que tiene algún derecho a ocupar un inmueble y que tiene un título tan bueno o mejor que el del demandante, surge un conflicto de título que hace improcedente la acción de desahucio. Tal conflicto, debe ser dilucidado en el juicio declarativo correspondiente**; **pero no se debe extender este principio a casos en que no hay posibilidad de título en favor de la parte demandada**[66]. (*Énfasis suplido*).

Por consiguiente, tratándose el presente caso de un desahucio en precario por la vía sumaria y habida cuenta de que el apelante no logró establecer que ostenta un mejor título sobre la propiedad en controversia, determinamos que no se cometió el error señalado.

### IV.

Por los fundamentos que anteceden, se ***confirma*** el dictamen apelado.

Notifíquese la Sentencia al Departamento de la Familia y a la Oficina de la Procuradora de Personas Envejecientes (OPPEA).

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[66] *CRUV v. Román, supra,* pág. 322.